UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

GANDYDANCER, LLC,  No. 19-12669-t11

Debtor.

**OPINION**

Before the Court is the U.S. Trustee's ("UST's") motion to convert or dismiss this chapter 11 case, pursuant to § 1112(b)(1).[1] The Debtor objected. The Court finds that the UST has not carried its burden of establishing "cause" to convert or dismiss the case, so will deny the motion.

A.  Facts.[2]

For the purpose of ruling on the motion to convert or dismiss, the Court finds:[3]

Debtor filed this chapter 11 case on November 21, 2019. It has been a debtor in possession since.

Debtor is a New Mexico limited liability company, owned by Jamin Hutchens (70%) and James Hutchens (30%), husband and wife. Jamin is the managing member. Debtor, headquartered in Albuquerque, New Mexico, was a commercial railroad construction and support company for the BNSF Railroad.

Debtor lost most of its BNSF work, eventually causing Debtor to fail. When Debtor filed this case, its assets were in the possession of a receiver, which had been appointed in a state court

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.
[2] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).
[3] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

collection action. Worse, the New Mexico Taxation & Revenue Department had seized Debtor's bank accounts, preventing the receiver from making payroll. Thus, when Debtor filed it had no active business operations and no employees.

In the three years before the bankruptcy filing, Debtor had gross revenues of about $7.3 Million (2019), $14.6 Million (2018), and $7.4 Million (2017).

Debtor blames its business failure on Karl Pergola and Rock House CGM, LLC ("Rock House"). Debtor alleges in a pending state court action against Pergola and Rock House (the "Rock House litigation")[4] that, despite not being properly licensed, Pergola and Rock Horse wrongfully and tortiously convinced BNSF to transfer to Rock House the bulk of the railroad repair and maintenance work previously done by Debtor. The Rock House litigation is scheduled for a two-week jury trial in January 2023.

The cost of the Rock House litigation is being financed by GandyLand, LLC, through loans to the Debtor. GandyLand is owned by the Hutchenses. So far, Debtor has borrowed about $400,000 from GandyLand to pay for the Rock House litigation. A favorable result in the Rock House litigation appears to be the only way general unsecured creditors will get a dividend in this case.

Debtor filed a motion on November 18, 2021, to approve the post-petition payment of about $212,000 of prepetition "trust fund" taxes owed to the Internal Revenue Service. The UST objected, and the matter was never set for hearing. Nevertheless, the Hutchenses loaned Debtor enough money to pay the tax claim, and Debtor paid it. The Hutchenses subsequently filed a claim for reimbursement. The validity and/or priority of the reimbursement claim is disputed.

---

[4] *GandyDancer LLC v. Rock House CGM, LLC, et al.*, D-202-CV-2015-09230, pending in the Second Judicial District Court, State of New Mexico.

The UST filed the motion to convert or dismiss on May 27, 2022. At the time, Debtor was significantly behind on filing its monthly operating reports ("MORs") and had not filed a chapter 11 plan. Debtor caught up on the MORs within a month and has remained current. On August 4, 2022, Debtor filed a plan of liquidation and a disclosure statement.

As the managing member, Jamin is responsible for preparing the MORs. She testified that she got behind on the MORs and on filing a plan of reorganization/liquidation because a number of difficult problems hit her at once:

- She moved to Florida because James Hutchens got a job there. In the process of moving, she lost a hard drive with a lot of accounting information;
- Her mother and grandmother became very ill. Jamin took care of them as best she could. Her grandmother died in April 2021, while her mother died in November 2021;
- She and James have separated and are getting a divorce; and
- As result of the foregoing, she became severely depressed.

Jamin testified credibly that she is now able to focus better and be more productive than before. She believes she will be able to stay current with the MORs and continuing to assist Debtor's state court counsel getting the Rock House litigation ready for trial.

In general terms, Debtor's plan of liquidation proposes to use the proceeds from the Rock House litigation to pay, in the following order:

- administrative expenses;
- priority tax claims;
- an $8,500 priority wage claim;
- the Hutchenses' $212,000 reimbursement claim; and
- general unsecured claims.

Jamin is required to do a lot of work on the Rock House litigation. It probably will keep her and Debtor's state court lawyers busy between now and the end of trial. She testified without challenge or contradiction that if a chapter 7 trustee took over the bankruptcy case, GandyLand would not fund the litigation and she would not work on it. Both things have to happen for a successful outcome in the Rock House litigation, in the Court's opinion.

Dismissal of the bankruptcy case is not an attractive option for general unsecured creditors. According to Debtor's statement of financial affairs, eight collection actions were pending against Debtor when it filed this case. Dismissal would restart a "race to the courthouse" that would harm general creditors by, inter alia, distracting Debtor from work on the Rock House litigation. Defending eight collection actions also would be expensive. Finally, a receiver could be reappointed, which could wrest control of the Rock House litigation from Debtor at a critical time.

Other than the Rock House litigation, Debtor owned claims against JMD Construction Services, LLC and others that were asserted in an action styled *JMD Construction Services, LLC v. GandyDancer, LLC et al.*, 19-CV-227 WJ/KK. The action was pending in the United States District Court for the District of New Mexico. The parties settled the case in November 2021. Debtor did not file a motion in the bankruptcy case to approve the settlement until July 28, 2022.

According to Debtor's MORs, its net income since the petition date has been:

| Year | Revenue | Other income | Expenses | Net income |
|---|---|---|---|---|
| 2019 (post-petition) | $0 | $0 | -$1,047 | -$1,047 |
| 2020 | $81,101 | $366,867 | -$246,442 | $201,526 |
| 2021 | $7,049 | $0 | -$167,501 | -$160,452 |
| 2022 to date | $501 | $0 | -$126,729 | -$126,228 |
| Total | | | | -$86,201 |

Debtor's assets and liabilities between 2020-22, as shown by the MORs, can be summarized as follows:

| Year | Total assets | Total liabilities | Net equity |
|---|---|---|---|
| 2020 | $2,521,876 | -$7,474,676 | -$4,952,800 |
| 2021 | $2,266,133 | -$6,433,735 | -$4,167,602 |
| 2022 | $2,358,563 | -$6,652,894 | -$4,292,331 |

The Court held a final hearing on the UST's motion to convert or dismiss on September 20, 2022. Jamin and Debtor's state court counsel, Robert Singer, were the only witnesses. Two creditors attended the hearing, Constructors Inc. (which filed a claim for $488,000) and H&E Equipment Services (which filed a claim for $11,261). Both creditors support Debtor's efforts to confirm a plan of liquidation based on pursuit of the Rock House litigation. Both oppose the motion to convert or dismiss. Rock House's counsel also attended the final hearing. Unsurprisingly, Rock House supports the UST's motion.

B.     Standard for Conversion or Dismissal under § 1112(b)(1).

Section 1112(b)(1) provides in relevant part:

> [o]n . . . request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]

Section 1112(b)(4) include 16 examples of "cause." The list is not exhaustive. *See, e.g., In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991) (the examples of "cause" in § 1112(b) are not exhaustive); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) (same); *In re Autterson*, 547 B.R. 372, 409 (Bankr. D. Colo. 2016) (same).

-5-
Case 19-12669-t11    Doc 338    Filed 10/31/22    Entered 10/31/22 15:49:00 Page 5 of 12

The Court is obligated to convert or dismiss a case if the movant demonstrates cause and the "unusual circumstances" exception in § 1112(b)(2)[5] does not apply. *See, e.g., In re L&T Machining, Inc.*, 2013 WL 3368984, at *7 (Bankr. D. Kan.) (court forced to convert or dismiss the case because cause was demonstrated and debtor failed to establish the "unusual circumstances" exception).

The party requesting dismissal or conversion bears the burden of demonstrating "cause." *In re Alt*, 305 F.3d 413, 420 (6th Cir. 2002). The standard is a preponderance of the evidence. *See, e.g., In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994); *In re Jet Sales West, LLC*, 2021 WL 6013541, at *2 (Bankr. D.N.M.); *In re Sunnyland Farms, Inc.*, 517 B.R. 263, 266 (Bankr. D.N.M. 2014).

C.  <u>The UST Did Not Demonstrate Cause to Convert or Dismiss</u>.

The motion cites four examples of alleged cause:

- § 1112(b)(4)(A): substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
- § 1112(b)(4)(F): unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
- § 1112(b)(4)(H): failure timely to provide information or attend meetings reasonably requested by the United States trustee; and
- Failure to file a plan within a reasonable time.

1.  <u>§ 1112(b)(4)(A) (substantial or continuing loss/no likelihood of rehabilitation)</u>.

Cause under this subsection has two important parts: a substantial or continuing loss to or

---

[5] Section 1112(b)(2) provides: "The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that— (A) there is a reasonable likelihood that a plan will be confirmed ... within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)— (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."

diminution of the estate, and an absence of a reasonable likelihood of rehabilitation. *See, e.g., In re Andover Covered Bridge, LLC*, 553 B.R. 162, 174 (1st Cir. BAP 2016) (a two-part inquiry); *In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D.N.M. 2010) (same); *In re Citi-Toledo Partners*, 170 B.R 602, 606 (Bankr. N.D. Ohio 1994) (same). Both parts must be satisfied. *Andover Covered Bridge*, 553 B.R. at 174.

       a.    Substantial or continuing loss. "To demonstrate 'cause' pursuant to § 1112(b)(4)(A), the loss may be either substantial or continuing, but it need not be both." *Delta AG Group*, 596 B.R. 186, 195 (Bankr. W.D. La. 2019), citing *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 61 (6th Cir. 2013). Here, the Court finds that Debtor's losses are neither.

Debtor's balance sheet is in better shape now than in 2020, and the losses in 2021 and 2022 were significantly offset by the income in 2020. Furthermore, during the time Debtor has been in chapter 11, it has pursued the Rock House litigation diligently. The action is now nearly ready for trial. If successful, it would provide a very substantial benefit for Debtor's creditors, potentially dwarfing the post-petition losses. Given the likely steady increase in value of the Rock House claim as Jamin and Debtor's state court counsel prepared the case for trial, the Court finds and concludes that Debtor has not suffered substantial or continuing loss to or diminution of its estate.

Because of that finding, the Court need not address whether Debtor has a likelihood of rehabilitation. *Andover Covered Bridge*, 553 B.R. at 174 (both tests must be satisfied for cause to exist under § 1112(b)(4)(A)).

       2.    § 1112(b)(4)(F) (unexcused failure to satisfy timely any filing or reporting requirement). Pursuant to § 1106(a)(1), § 704(a)(8), and 28 C.F.R. § 58.8(b), chapter 11 debtors in possession are required to file MORs using the prescribed form. Cause for conversion or

-7-
Case 19-12669-t11    Doc 338    Filed 10/31/22    Entered 10/31/22 15:49:00 Page 7 of 12

dismissal includes Debtor's unexcused failure to do so timely. *See, e.g., In re Hoyle*, 2013 WL 210254, at *10 (Bankr. D. Id.).

MORs are due on the 21st day after the end of the month being reported. *See* Instructions for UST Form 11-MOR (justice.gov), p. 2.

> Monthly reports and the financial disclosures contained within them "are the life-blood of the Chapter 11 process" and are more than "mere busy work." *Matter of Berryhill,* 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a "mere technicality." *In re Ronald Kern & Sons,* 2002 WL 1628908, at *1 (W.D.N.Y. June 11, 2002)

*In re Whetten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012). Debtor has often filed its MORs late. Furthermore, catching up on the tardy reports may not be enough:

> Nor does the fact that the Debtors eventually filed their reports cure this problem. . . . Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out.

*Hoyle*, 2013 WL 210254, at *10 (quoting *Whetten*, 473 B.R. at 383).

Before "cause" can be established under § 1112(b)(4)(F), however, the bankruptcy court must find that the late filings are "unexcused." That term has been interpreted to give courts "leeway to find, under appropriate circumstances, that 'cause' has not been established if there is an acceptable reason for the failure." *In re Franmar, Inc.*, 361 B.R. 170, 178 (Bankr. D. Colo. 2006).

> By inference the Court, therefore, has the ability and some discretion to determine what is an "excused" or "unexcused" failure to "timely file" the designated documents.

*Id.* at 178-79. Similarly, the court held in *In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, (Bankr. D. Maryland 2011):

> The non-filing of required reports must be "unexcused," therefore indicating that the court has discretion to determine whether the debtor's failure rises to the level of cause.

448 B.R. at 716. And in *In re Creech*, 538 B.R. 245 (Bankr. E.D.N.C. 2015), the court held:

> To warrant cause for dismissal or conversion, the non–filing or untimely filing of required reports must be "unexcused"; therefore, it is within the court's discretion to determine whether the debtor's failure [to file required reports] establishes cause.

538 B.R. at 252; *see also In re Hoyle*, 2013 WL 210254, at *11, n.57 ("The Code's use of the adjective 'unexcused' in § 1112(b)(4)(f) implies the Court has some discretion to decide whether an untimely or otherwise improper report is excused."); 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed.) ("subsection . . . 1112(b)(4)(F), providing that an unexcused failure to satisfy timely any filing or reporting requirements . . . give[s] the court implicit discretion in determining whether the . . . failure to file reports was sufficiently unexcused to constitute cause."); *In re Puerto Rico Hospital Supply Inc.*, 2020 WL 5883943, at *14 (Bankr. D.P.R.) (citing *Franmar* and quoting Collier).

The Court holds that it is appropriate to consider the totality of the circumstances when ruling whether Debtor's tardiness in filing the MORs is unexcused. Here, several facts militate in favor of excusing the lateness. First, Debtor is not an operating company. The level of activity, on both the income and expense sides of the ledger, is very modest. There is less to learn from the MORs than if Debtor had been operating at its historical level, with millions of dollars flowing in and out of its coffers. For the month ended September 30, 2022, for example, Debtor had no deposits, one check (to state court counsel, for work done on the Rock House litigation), and an $875 electronic transfer to Yeshua Group LLC.

Second, Debtor is not attempting to restart operations, but to liquidate after the Rock House litigation concludes. There will be no feasibility issues that render the MORs vital to the plan confirmation process.

Third, Jamin has been through a lot recently: moving out of state; losing her mother and grandmother after caring for them in their final illnesses; going through a divorce; and battling severe depression. It would not be right to ignore these cascading difficulties.

Finally, it is not in the best interest of creditors to convert or dismiss the case. Debtor's main asset is the claim against Rock House; this case was filed in part so Debtor could focus on the Rock House litigation. With no attractive alternative, creditors have been willing to wait and see how the litigation turns out, giving Debtor the time it needs to get the case ready for trial. The evidence indicates that, despite her recent stress and heartache, Jamin and Debtor's state court counsel have been diligent in preparing the Rock House litigation for trial, which is imminent. Conversion or dismissal now could be fatal to the hopes of creditors for a dividend. The requirement that debtors file MORs timely is designed to benefit creditors. It would be ironic to enforce the rule strictly here, hurting those the rule is supposed to help.

All things considered, the Court holds that Debtor's failure to file its MORs timely was excused.

3. §  1112(b)(4)(H) (failure to provide information to the UST). This subsection has been interpreted to require debtors to "timely provide information or attend meetings reasonably requested." *Franmar*, 361 B.R. at 179, n.22; 7 Collier on Bankruptcy ¶ 1112.04[6][h]. In support of a "cause" finding under this subparagraph, the UST points to Debtor's failure to timely file its MORs. Because subsection (b)(4)(F) applies to MORs, the Court concludes that subsection (b)(4)(H) does not. This conclusion is required because, inter alia, the "unexcused" exception in

(b)(4)(F) is not found in (b)(4)(H). Any overlap of the two subsections would cause ambiguity and confusion.

    4.    <u>Failure to file an acceptable plan within a reasonable time</u>. The UST also argues that the case should be converted or dismissed because "Debtor has been in chapter 11 for 30 months without filing a disclosure statement or plan . . . [and] has no business operations or income and has no likelihood of rehabilitation." Motion, p. 4.

Cause to convert or dismiss under § 1112(b) can include the failure to file a confirmable plan within a reasonable time and the inability to confirm a plan. *See, e.g., Hall v. Vance*, 887 F.2d at 1044 ("[T]he bankruptcy court may convert or dismiss a chapter 11 case if the debtor is unable to effectuate a plan, which means that the debtor lacks the ability to formulate a plan or to carry one out."); *In re Vincens*, 287 F. App'x 686, 688 (10th Cir. 2008) (unpublished) ("Dismissal . . . is appropriate where the debtor's failure to file an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason.").

The UST is right that Debtor waited too long to file a plan; it should have been filed much sooner. Nevertheless, the UST's argument is overruled because, unlike the debtors in *Hall v. Vance* and *Vincens*, Debtor appears able to confirm a plan. The disclosure statement likely will be approved in mid-November, with a plan confirmation hearing to be scheduled for some time in January 2023. The plan is a simple liquidation plan, based on the net recovery from the Rock House litigation. Debtor may need the affirmative votes of all three creditor classes treated under the plan,[6] but Jamin is optimistic on that point. Even if a change to the priority of Class 2 were

---

[6] There is disagreement about the priority of Class 2. If the Court later rules that Class two has a lower priority than Class 3, then the plan could not be confirmed unless Class 3 votes in favor of it. *See* § 1129(b)(2)(B)(ii).

required (the Court is not ruling on this issue), the Court finds that Debtor has the ability to confirm a plan of liquidation in the near future.

## Conclusion

The UST did the right thing by filing the motion to convert or dismiss. Debtor had been tardy with its MORs, and the motion had the salutary effect of getting Debtor to focus on its reporting duties.

Furthermore, the motion prompted Debtor to file a plan and disclosure statement. The plan will be set for a confirmation hearing in the coming months, and the Court believes that a confirmed plan of liquidation is within Debtor's reach in the near future.

Finally, it appears that the motion caused Debtor to seek Court approval of the JMD Construction settlement. Debtor's counsel should have filed a motion to approve the settlement last November, but late is better than never.

With respect to the merits, the Court holds that cause has not been shown for conversion or dismissal under § 1112(b)(1) in general, or §§ 1112(b)(4)(A), (F), or (H) in particular. The motion will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 31, 2022
Copies to: Counsel of record